UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE THOMPSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BICK, *et al.*,<br><br>　　　　Defendants. | Case No. 2:19-cv-01651-JDP (PC)<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>ECF No. 26 |

Plaintiff, a state prisoner proceeding without counsel in this action brought under 42 U.S.C. § 1983, alleges that defendants Petras and Bick violated his Eighth Amendment rights by terminating his methadone prescription. ECF No. 10. Defendants move for summary judgment, arguing that plaintiff cannot show that they were deliberately indifferent to his medical needs. ECF No. 26. The court grants summary judgment in defendants' favor.

**Background**

Plaintiff has experienced chronic low back pain for more than two decades and has periodically been treated with opioid pain medications. *See* ECF No. 26-5 at 13. Following his 2014 transfer to California Medical Facility ("CMF"), a medical provider not named in this suit prescribed him methadone, which he claims both reduced his urinary and fecal incontinence and also reduced his pain to a level that allowed him to walk, attend classes, and perform daily activities. ECF No. 30 at 3.

Plaintiff attests that, in October 2018, his primary care provider—then Dr. Ota—explained that because of guidelines promulgated by defendant Bick, CMF's Chief Medical Officer, she had been instructed "to taper [plaintiff] off of [his] pain medication (methadone)." *Id.* at 4-5. Ota wrote in plaintiff's medical record that she had decided to taper his methadone "because he [wa]s on an unsafe level [of] over 90 morphine milligram equivalents." *Id.* at 240. She further explained that there was "a lack of evidence of long-term improvement in the amount of pain," and that his methadone use "places him at a risk for physical and psychological dependence, drug overdose, and death." *Id*. In a November 2018 response to a health care grievance, defendant Bick stated that "[t]he department is reviewing all patients across the state to ensure that the benefits of opiates outweighs the risk." *Id.* at 72. On December 18, 2018, plaintiff signed a form titled "Informed Consent for Treatment with Opioid Medication," noting his acknowledgement of the major health risks associated with opioid medications, including overdose and dependence, and consenting to "strict rules for the use of opioid medications." ECF No. 26-5 at 12.

In February 2019, Ota informed plaintiff that Petras would be taking over as his primary care provider and on March 4, 2019, Petras had his first visit with plaintiff in this role. ECF No. 30 at 10-11, 246. According to his progress notes from that visit, plaintiff had been tapered to a daily dose of approximately 45 morphine milligram equivalents of methadone and placed on a trial of gabapentin. *Id.* at 246. He reported to Petras that both his pain and mobility had worsened since beginning to taper off of methadone. *Id*. He attests that Petras nevertheless told him that he would be tapered entirely off methadone pursuant to defendant Bick's new guidelines. *Id.* at 10. Under a section of the March 4 progress note entitled "Assessment/Plan," Petras wrote that he discussed with plaintiff "the utility of tapering him off opioids entirely . . . [and] explained to him that [an] MRI from 2016 did not explain the severity of his pain or disability." ECF No. 26-5 at 25. Additional notes from that visit state that the MRI showed only "mild degenerative changes, nothing that would cause him to be [wheelchair] bound most of the time or [to] have severe debilitating lumbar spinal stenosis symptoms"; that plaintiff "will be referred to [physical therapy] for remobilization"; and, that an "interventional pain specialist is needed once

1  opioids have been washed out completely." *Id.*[1]

2  Plaintiff saw Petras again on March 29, 2019, *id*. at 21, at which visit he reported, "I am in serious pain, urinating and defecating on myself a lot, I can hardly walk or stand, I am having problems with going to get my insulin that I really need," *id.*; ECF No. 30 at 11.  At that visit, Petras asked him to provide a urine sample to test whether he had been taking his methadone as prescribed.  *Id*.  Petras wrote, "I have reconsidered stoppage of methadone at this moment due to legitimate functional complaints by the patient.  [H]e is also on a much safer dosage than previously.  [I]f [his urine toxicology screening] is normal I will request [an] eval[uation] by [CMF] pain[] [committee]."  ECF No. 26-5 at 22.

On April 11, 2019, plaintiff received a note from Petras regarding his urine toxicology screening:

> Dear Mr. Thompson, your recent urine toxicology screen is negative for any substances including the methadone you have been prescribed.  It is reasonable to conclude you are diverting all your prescribed methadone or that you substituted water or someone else's urine for the urine sample you submitted.  In either case, I am required to taper and stop your methadone under these circumstances.

*Id.* at 10.  In his declaration, Petras attests that "terminating plaintiff's methadone prescription following a urine toxicology drug screen with a negative result for methadone was not only appropriate[] but was required and medically necessary."  *Id*. at 2.  He also attests that "[u]pon review of [plaintiff's] medical records, including the result of an MRI, there did not appear to be an objective medical reason for the level of pain and level of disability of plaintiff."  *Id*.

For at least a year following the discontinuation of his methadone, plaintiff complained of pain in his back, decreased mobility, worsening sleep, and a lack of control over urination and defecation, without receiving methadone or other opioid pain medications.  *Id*. at 12-17.  His

---

[1] Plaintiff also claims that around this time he requested pain medication to treat his diabetic foot pain, although he does not appear to base his deliberate indifference claim on these facts.  *See* ECF No. 30 at 8 & 25.  He appears to claim that Ota requested approval from Bick to prescribe gabapentin for his diabetic foot pain.  *Id*. at 8.  Although he does not state whether he received gabapentin, Petras wrote in the progress notes from the March 4 visit that he was "stopp[ing] gabapentin" after a one-month trial because plaintiff had stated that it "did nothing for his pain."  *Id*. at 246.

3

medical records show that Petras conducted additional X-ray and MRI examinations of his lumbar spine in April and June 2019, and that he provided alternative pain medications, such as acetaminophen and topical cream. *Id.* at 16. Plaintiff maintains that these treatments were ineffective and that the deprivation of methadone constituted deliberate indifference to his serious medical needs.

## Legal Standards

### A.     Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to portions of depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider material in the record beyond that cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). Given the liberal standard afforded pro se litigants and the prohibition against granting summary judgment by default, I will take the whole record into consideration in evaluating whether defendants are entitled to summary judgement.

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an

essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this initial burden, the burden shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323).  While the non-moving party is not required to establish a material issue of fact conclusively in its favor, it must at least produce "evidence from which a jury could reasonably render a verdict in [its] favor." *Id.* (citing *Anderson*, 477 U.S. at 252).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the non-moving party.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002).

### B. Eighth Amendment Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-prong test for deliberate indifference requires a plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)).  "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060).  Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.*  When a prisoner alleges a delay in receiving medical treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate indifference to serious medical needs.  *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

   "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)). Additionally, a difference of opinion between an inmate and prison medical personnel about a medical diagnosis or course of treatment is insufficient to support a deliberate indifference claim. *See Id.* at 1058; *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012.

### Discussion

  As an initial matter, a reasonable juror could conclude that plaintiff's chronic pain constitutes an objectively "serious medical need." *See McGuckin*, 974 F.2d at 1059 (holding that "[t]he existence of chronic and substantial pain" is an "indication[] that a prisoner has a serious need for medical treatment"). The dispute centers on the "second prong—[whether] defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

  Plaintiff argues that the decision to taper and eventually discontinue his methadone treatment constituted deliberate indifference because it was based solely on administrative policies, rather than on Ota or Petras' professional medical judgment. *See* ECF No. 30 at 19-21. Defendants argue that "plaintiff was regularly examined for his claims of chronic back pain," ECF No. 26-1 at 13, and that both Ota and Petras exercised professional "medical judgment in treating him," *id*. at 12. Thus, they contend, the record shows "nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another." *Wilhelm*, 680 F.3d at 1122; *see* ECF No. 26-1.

Deliberate indifference is manifested when a medical provider relies solely on administrative policy to terminate treatment or to provide less-effective treatment. *See Colwell v. Bannister*, 743 F.3d 1060, 1063 (9th Cir. 2014) ("[T]he blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy . . . is the paradigm of deliberate indifference."). In such cases, a prisoner need not prove a complete denial of pain medication; where a provider substitutes the application of administrative policy for their own medical judgment, it is enough that the alternative treatments were ineffective or substantially inferior. *See Franklin v. Dudley*, 2:07-CV-2259-FCD-KJN, 2010 WL 5477693, at *6 (E.D. Cal. Dec. 29, 2010) (holding that a reasonable jury could find deliberate indifference where plaintiff's narcotic pain medication was substituted for over-the-counter medications pursuant to the prison's no-narcotics policy); *Chess v. Dovey*, CVS-07-1767-LKK-DAD, 2011 WL 567375, at *21 (E.D. Cal. Feb. 15, 2011) (finding deliberate indifference where a prisoner's methadone was substituted for "Tylenol and aspirin . . . [,] not because any one of them determined that it was medically unnecessary, but solely because [prison] policy prohibits general population inmates from receiving methadone").

Nevertheless, the record reflects that defendant Petras exercised acceptable medical judgment in deciding whether to discontinue plaintiff's methadone prescription. Plaintiff's medical records show that Petras conducted an independent evaluation of plaintiff's need for narcotic pain medication: for instance, he observed that a 2016 MRI showed only mild degeneration in his spine and concluded that "there did not appear to be an objective medical reason for the level of pain and level of disability reported by plaintiff." ECF No. 26-5 at 2 & 24. Even after making this determination, he considered plaintiff's "legitimate functional complaints" following the first phase of tapering his methadone—plaintiff had reported serious pain, difficulty walking and standing, and fecal and urinary incontinence—and delayed the tapering process until he could review the results of plaintiff's drug screening. *See id.* at 22. When the drug screening returned negative, Petras determined that "it [was] reasonable to conclude [plaintiff was] diverting all [his] prescribed methadone," *id.* at 10, and that "terminating [hi]s methadone prescription . . . was not only appropriate[] but was required and medically necessary," *id.* at 2.

Plaintiff argues that, because Petras wrote that he was "required to taper and stop [hi]s methadone" after a negative urine test, the denial of medical care constituted "a form of punishment." ECF No. 30 at 21 (quoting *Sullivant v. Spectrum Med. Servs.*, CV 11-00119-M-JCL, 2013 WL 265992, at *7 (D. Mont. Jan. 23, 2013)). In *Sullivant*, a nurse practitioner terminated the plaintiff's access to medications for major depression and major anxiety disorders—forcing him to withdraw "cold-turkey"—solely because an officer had observed him "trying to hide the medication . . . in his pants." 2013 WL 265992, at *2-3. The court explained that "[d]enial of medical care as a form of punishment" constitutes deliberate indifference "if there is not some evidence that medical consequences were considered" and stressed that "[t]he only explanation . . . for the discontinuation of [the plaintiff's] medications [was] that he was hoarding the medications." *Id.* at *7.

Here, in contrast, the record indicates that Petras did not terminate plaintiff's methadone solely due to suspicion that plaintiff was diverting medication, but because the negative urine test supported his conclusion that there was no "objective medical reason for the level of pain and level of disability reported by plaintiff." ECF No. 26-5 at 2. Courts in this circuit have held that similar determinations constitute acceptable medical judgments. *See, e.g.*, *Paredez v. Hedgpeth*, C 11-3351 SI PR, 2013 WL 269086, at *6 (N.D. Cal. Jan. 24, 2013) (holding that a doctor's decision to taper a prisoner-plaintiff off morphine after he "was reported to have abused narcotics" did not constitute deliberate indifference because the decision was made "pursuant to a medical policy that was separate from any disciplinary charge that may have been made"). Rather than stopping plaintiff's medication cold turkey, as in *Sullivant*, Petras tapered plaintiff off methadone and provided follow-up treatment for his chronic pain issues, including providing non-opioid pain medication, conducting additional examinations, and by referring plaintiff to outside specialists. In light of these undisputed facts, plaintiff has not shown that there is a genuine issue of material fact as to whether Petras acted with deliberate indifference.

Next, plaintiff claims that defendant Bick is liable as a policymaker for implementing the opioid guidelines. ECF No. 30 at 33. To establish supervisory liability for an unconstitutional policy, a plaintiff must show that a supervisory official "promulgated, implemented, or in some

other way possessed responsibility for the continued operation of . . . a policy that instructs its adherents to violate constitutional rights" and that a constitutional violation "occurred pursuant to that policy."  *OSU Student All. v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (internal marks omitted)).  Plaintiff has shown neither that the guidelines required a categorical denial of narcotic medication regardless of need—like the policies at issue in *Chess*, 2011 WL 567375 at *21, and *Franklin*, 2010 WL 5477693 at *6—nor that anybody violated his rights pursuant to Bick's policy.  To the contrary, defendant Bick described the implementation of the new guidelines as a process of "reviewing all patients across the state to ensure that the benefits of opiates outweigh the risk," ECF No. 30 at 72; and the record reflects that, like Petras, Ota weighed benefits and risks to plaintiff's health in the course of rendering a medical decision, *see* ECF No. 26-5 at 26 (stating that plaintiff's methadone was at "an unsafe level [of] over 90 morphine milligram equivalents," and that "there is a lack of evidence that long-term narcotic pain medications are safe or effective").  Accordingly, on the evidence in the record, a reasonable juror could not conclude that Bick acted with deliberate indifference.

      Accordingly, it is hereby ORDERED that:

      1. Defendants' motion for summary judgment, ECF No. 26, is granted;

      2. plaintiff's claims against all defendants are dismissed; and

      3. the Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Dated:   August 9, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE